IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00484-CMA-KLM

DWIGHT D. DAVIS,

    Applicant,

v.

MICHAEL ARRELLANO, Warden, AVCF, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

Before the Court is an **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [Docket No. 2; Filed March 10, 2008] filed by Dwight D. Davis ("Applicant"). Respondents' Answer was filed on September 19, 2008 [Docket No. 24] and Applicant's Traverse was filed on October 9, 2009 [Docket No. 67]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R. 72.1C, the Application has been referred to this Court for recommendation. The case has been fully briefed and is ripe for resolution. The Court has considered the relevant pleadings, the state court record, and the applicable case law, and is sufficiently advised in the premises. For the reasons set forth below, the Court recommends that the Application be **DENIED**.

### I. Background and Procedural History

Applicant is currently incarcerated at the Arkansas Valley Correctional Facility in Crowley, Colorado. On October 1, 1992, in El Paso County District Court, Applicant was

charged with unlawful possession and unlawful distribution of a Schedule II controlled substance, in violation of Colo. Rev. Stat. § 18-18-405, unlawfully carrying a concealed weapon, in violation of Colo. Rev. Stat. § 18-12-105, and offenses related to marijuana, in violation of Colo. Rev. Stat. § 18-18-06.  *Record* v. 1 at 2.[1] The evidence at trial established the following: on October 1, 1992, Walter Lindenberg went to the Baja Lounge in Colorado Springs, Colorado to purchase rock cocaine.  *Record* v. XIII at 166-68.  Applicant offered Lindenberg two rocks of cocaine, which were inside a Tylenol bottle, for $40.00.  *Id.* at 171.  Lindenberg refused.  Later, Applicant placed a gun to Lindenberg's head and stated, "Don't play me like that."  *Id.*  Soon thereafter, Applicant left the lounge.  *Id.* at 172.  Because Lindenberg could not find anyone else, he went outside and stood in front of a liquor store, where he purchased the cocaine from Applicant.  *Id.* at 173.

The drug transaction was observed by officers of the Colorado Springs Police Department.  They were conducting surveillance of the area directly across from the front door of the Baja Lounge.  *Id.* at 266.  After the drug sale was concluded, the police arrested Applicant inside the Baja Lounge.  *Id.* at 209, 232, 245.  When Lindenberg was arrested, the police found crack cocaine in his pocket. Lindenberg identified Applicant as the seller of the drugs. *Id.* at 231-32, 253, 255.  Applicant was placed in the back of the police cruiser.  Applicant pulled out a loaded .22 caliber semi-automatic pistol.  The police were able to wrestle it away from him.  *Id.* at 216, 235-39, 247.  In Applicant' pants pocket, the police found nineteen rocks of crack cocaine in the Tylenol bottle and $570 in cash.  *Id.* at 213,

---

[1] The state court record provided to the Court consists of loose leaf pleadings and transcripts, the latter of which are on a compact disc.  The transcript volumes are identified by Roman numerals.

239, 248.

When they were at the booking area after their arrests, Applicant told Lindenberg that he had concealed an additional two ounces of cocaine in the police car, which the police later recovered. *Id.* at 176-77, 219. During an interview after his arrest, Applicant admitted to a police officer that he had been selling drugs at the Baja Lounge and that the crack cocaine in the Tylenol bottle and the baggy of cocaine found in the police cruiser belonged to him. *Id.* at 223-25.

On November 2, 1993, Applicant was found guilty of the possession and distribution of a controlled substance and of using, possessing, or having available for use a deadly weapon. *Id.* v. I at 46-47; v. XIII at 319. Applicant was sentenced to a twenty-four year term of imprisonment for the drug counts, and twenty-four years for the special penalty enhancer, i.e. the possession of a deadly weapon, the terms to be served concurrently. *Id.* v. I at 49.[2]

Applicant did not file a direct appeal of his convictions. *Application* [#2] at 3. On May 27, 1997, Applicant filed a postconviction motion to vacate and set aside judgment pursuant to Colo. R. Crim. P. 35(c) in El Paso County District Court. *Record* v. 1 at 57-65. He alleged that he was denied the effective assistance of counsel. The El Paso County District Court appointed counsel to represent Applicant on his postconviction motion. *Id.* at 88.

Applicant filed an Amended Motion for Relief Under Rule 35(c) on June 13, 2003. The Amended Motion supplemented Applicant's *pro se* motion by adding allegations in support of the ineffective assistance of counsel claim. *Id.* v. 2 at 335. The El Paso County

---

[2] While this case was pending, Applicant was charged and convicted of a number of other offenses and sentenced to twelve years' imprisonment. *Record* v. II at 256-57. Those convictions are not at issue in the Application.

District Court held an evidentiary hearing on Applicant's Rule 35(c) motion on July 20, 2004 and July 27, 2004. At the hearing, Applicant asserted that he first became aware that he was being denied the effective assistance of counsel when his retained attorney, Tyler Makepeace, on the first day of trial testimony, told the trial judge that he felt that he was not prepared for the trial and requested a continuance. *Id.* v. III at 10.[3] There is no record of this in the trial transcript. *Id.* at 10-11.

Applicant testified that counsel visited him a few times in jail, but they never discussed trial strategy or preparation for trial. *Id.* at 11. Applicant asserted that counsel was only interested in discussing a plea bargain. *Id.* at 12. He informed counsel that codefendant Lindenberg's case had been dismissed and requested that Makepeace see if his case could be dismissed on the same basis. *Id.* at 15-16. According to Applicant, Makepeace did not follow through on this issue. *Id.* at 16.

Applicant alleged that the plea bargain offered by the prosecution was a sentence of ten to thirty-two years of imprisonment. *Id.* at 17. Applicant claimed that he was willing to plead guilty to a sentence of fifteen years, but Makepeace never indicated that he had reached such an agreement. *Id.* In his testimony, Applicant admitted that at the time of his arrest he was in possession of drugs and a weapon. *Id.* at 18-19.

Applicant also testified that he believed that Makepeace had not read the police reports because he was not aware of inconsistent statements in those reports. *Id.* at 16-17. To Applicant, counsel appeared unprepared to cross-examine the prosecution's witnesses. *Id.* at 16. Prior to trial, Applicant claimed, counsel never informed him of his right to testify

---

[3] Volume III of the state court record is a transcript of July 20, 2004 hearing.

and the consequences of testifying.  *Id.* at 14.  Finally, Applicant alleged, counsel did not present a defense at trial.  *Id.*

After the trial, Makepeace informed Applicant of his right to appeal, but Makepeace did not believe that there were any meritorious issues.  *Id.* at 22, 34.  He never filed a notice of appeal or a motion to reduce sentence under Colo. R. Crim. P. 35(b).  *Id.* at 22.  Further, Makepeace erroneously informed Applicant that he could raise the issue of ineffective assistance of counsel at any time and that he would cooperate with Applicant's new attorney.  *Id.* at 22.

Private investigator Joe Arellano reviewed the police reports, interviewed Applicant and examined whether an investigation was done prior to trial.  *Id.* at 40.  Defense counsel had not hired an investigator.  *Id.* at 42.  Arellano claimed that an investigator would have been helpful to Applicant's defense.  *Id.* at 42-43.  Arellano admitted, in response to a question from the court, that nothing in his investigation revealed that the identification of Applicant by the police was suspect.  *Id.* at 47-49.  He also conceded that when Applicant was arrested he was in possession of drugs and a firearm.  *Id.* at 47.

Karrick Burrows, accepted by the court as an expert in criminal defense practice and criminal law, offered his opinion on the performance of Applicant's trial counsel.  *Id.* at 54.  Burrows argued that because the police lacked reasonable suspicion to stop Applicant, defense counsel was deficient in failing to file a motion to suppress.  *Id.* at 55, 64-65.  He stated that if the motion to suppress had been granted, Applicant would have been in a better posture in the plea bargaining process.  *Id.* at 65.

Burrows also found Makepeace's trial performance deficient because he was unprepared for trial, did not make an opening statement, did not subpoena witnesses, did

not present a defense, and was ineffective in cross-examination of the prosecution's witnesses. *Id.* at 65-68. Burrows concluded that he believed that counsel's performance prejudiced Applicant. *Id.* at 69. He specifically cited the suppression issue, stating that if the motion had been successful, the case against Applicant would have been dismissed by the prosecution. *Id.*

At the time of the postconviction evidentiary hearing, Applicant's counsel, J. Tyler Makepeace, had been practicing law since 1972 and a substantial portion of his practice involved criminal defense. *Id.* at 74. Makepeace had known Applicant many years before he was retained by Applicant in this case. *Id.* at 76. He was aware that Applicant had three prior felony convictions. *Id.* Because Applicant was subject to habitual criminal charges, Makepeace believed that the best he could do for Applicant was "damage control." *Id.* Early on in his presentation, Makepeace discussed plea negotiations. *Id.*

Makepeace asserted that he met with Applicant several times to discuss the case and read over the police reports. *Id.* at 77-78. In the meantime, Applicant was charged with a number of other felony offenses in a separate case. *Id.* at 77. Makepeace believed that "things were stacking up on" Applicant. *Id.* at 78. Makepeace stated that he could have filed a motion to suppress, but the police reports were damning and he feared that filing a motion would lead to a less favorable plea agreement. *Id.* at 79, 85. He asked for a continuance on the first day of trial because Applicant asked him to do so, apparently because Applicant "was concerned about the way things were coming down." *Id.* at 90. Makepeace and Applicant agreed to waive an opening statement as a trial strategy. *Id.* at 80.

Following the evidentiary hearing, on September 14, 2004, the El Paso County District Court denied Applicant's Amended Motion for Relief Under Rule 35(c), Colo. R.

Crim. P. *Record* v. 2 at 431-435.  Applicant appealed this decision to the Colorado Court of Appeals ("CCA"), raising one issue for review: whether the trial court erred in failing to find counsel ineffective, depriving Applicant of his rights under the Sixth Amendment.  *Answer* [#24] Ex. A.  In *People v. Davis*, 04CA2251 (Colo. App. May 10, 2007)(unpublished decision)("*Davis*"), the CCA affirmed the trial court's ruling that Applicant failed to establish that his counsel was ineffective so as to result in prejudice to him.  *Id.* at 10.  Applicant's Petition for Writ of Certiorari was denied by the Colorado Supreme Court on August 20, 2007. *Answer* [#24] Ex. E.

On March 10, 2008, Applicant filed the Application for habeas corpus relief in this Court, raising the following claims: (1) he was denied the effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments of the Constitution (Claim One);[4] (2) Applicant was denied his due process rights on his postconviction motion pursuant to Colo. R. Crim. P. 35(c) when the trial court denied his ineffective assistance of counsel claim (Claim Two); and (3) his due process rights were violated when the CCA affirmed the trial court's denial of his ineffective assistance of counsel claim (Claim Three).  *Application* [#2] at 5, 15.  On preliminary review of the Application, District Court Judge Zita L. Weinshienk dismissed Claims Two and Three on July 2, 2008.  *Order to Draw in Part and to Dismiss in Part* [#11].  Claim One, alleging ineffective assistance of counsel, is the sole remaining claim.

## II.   Analysis

---

[4] On September 8, 2008, the Court granted Applicant's motion to amend this claim [#20] to read "Petitioner's conviction was obtained as the result of Ineffective Assistance of Counsel at trial.  This violated Petitioner's 4th, 5th, 6th, and 14th Amendment U.S. Constitutional Rights."  *Id.* at 2.

7

### A. Applicant's Status

Applicant is proceeding *pro se*. Therefore, the Court must construe his Application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects caused by Applicant's *pro se* status. *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993). However, the Court is not the *pro se* party's advocate and must nevertheless deny an application that is based on vague or conclusory allegations. *Hall*, 935 F.2d at 1110.

### B. Standard of Review

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court, or (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999). A decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406. A decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue. *Id.* at 409. In addition, pursuant to this Court's habeas review, a presumption of correctness exists regarding trial and appellate court findings of fact. *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982). As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir.

1997).

      C.      *Ineffective Assistance of Counsel*

          1. Standard

Applicant alleges that he was denied his constitutional right to the effective assistance of counsel. Under *Strickland v. Washington,* 466 U.S. 668 (1984), to establish ineffectiveness of counsel, Applicant must show (1) that his counsel's actions fell below an objective standard of reasonableness, and (2) that the attorney's conduct prejudiced the proceedings such that, but for counsel's errors, the outcome of the proceedings would have been different. *Id.* at 687. "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. For counsel's performance to be constitutionally ineffective, "it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

In determining prejudice, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Applicant has identified fifteen instances where his counsel was allegedly ineffective:

1.      Failure to file a pretrial motion

2.      Failure to interview witnesses

3.      Failure to review the case with Applicant

      4.      Failure to review the prosecution's evidence

      5.      Failure to file a witness list or find witnesses to testify on Applicant's behalf

      6.      Failure to investigate the disposition of his codefendant's case

      7.      Counsel "was belated in his filing of suppression issues and missed the only viable issue available" to Applicant

      8.      Failure to investigate

      9.      Failure to prepare for trial

      10.     Counsel did not make an opening statement, file a motion for disclosure of evidence or pursue a theory of the defense

      11.     Failure to file any post-trial motions

      12.     Counsel did not file a motion for substitute counsel in response to Applicant's expression of dissatisfaction with counsel's representation

      13.     Counsel's cross-examination of prosecution witnesses was weak

      14.     Failure to object to trial court taking judicial notice of codefendant's testimony at the mid-trial suppression hearing and depriving the defense of cross-examination of the codefendant

      15.     Counsel failed to probably advise Applicant as to the grounds for an appeal or the deadline for filing an ineffective assistance of counsel claim

*Application* [#2] at 5-5b.

Applicant's fifteen claims generally involve pretrial matters, counsel's trial performance, the failure to file a motion to suppress, and negligence during the postconviction process.

      2.  Pretrial

In Claims 2-6 and 8, cited above, Applicant alleges that his trial counsel failed to

conduct a pretrial investigation, including interviewing witnesses, reviewing the case file with Applicant, failing to find witnesses, failing to file a motion for disclosure of evidence or other motions, and to investigate the disposition of the codefendant's case. The state courts found that trial counsel's testimony at the postconviction hearing was more credible, that the challenged conduct fell within the range of trial strategy, and that Applicant was not prejudiced as a result of counsel's conduct because of the overwhelming evidence of guilt. *Davis* at 10; *Record* v. 2 at 431-435.

Applicant cannot sustain his ineffectiveness claim because he cannot demonstrate prejudice. The court need not address both prongs of the *Strickland* test, so if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Strickland*, 466 U.S. at 697. The Court need not address both prongs if the Applicant fails to make a showing on one of them. *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir.1998).

The evidence against Applicant was overwhelming. The trial testimony established that police officers observed what they thought was a drug transaction between Lindenberg and Applicant. Lindenberg testified that Applicant sold him crack cocaine. When Applicant was arrested, he was in possession of 19 rocks of crack cocaine and a loaded handgun. After his arrest, Applicant told Lindenberg that he had hidden some cocaine in the police car. Applicant admitted to police officers that he sold crack cocaine to Lindenberg and was in possession of cocaine and a firearm when he was arrested. Based on this evidence, it is clear that Applicant was guilty of the offenses charged.

Applicant has failed to present any witness or document that would have altered the outcome of the trial. He has not shown how further investigation by counsel would have

rebutted the clear evidence of his guilt. Moreover, the testimony at the postconviction hearing is of no help to Applicant. A private investigator, who had reviewed the trial evidence and interviewed Applicant, did not discover anything that would have aided Applicant's case. Because Applicant has failed to show prejudice from his counsel's pretrial performance, his ineffective assistance argument should be denied as to claims 2,3,4,5,6,and 8 of the Application.

### 3. The Motion to Suppress

Applicant asserts that counsel was ineffective for not filing a timely motion to suppress and for not challenging the police officers' initial stop of Applicant (claim 7). Trial counsel testified at the state postconviction hearing that he delayed filing the motion to suppress before trial because he hoped to obtain a plea agreement with the prosecutor. He stated that in his experience, if a defendant files a motion to suppress, the prosecutor will offer a less favorable plea bargain. The state district court noted that the filing of motions to suppress during trial is not the best practice; however the motion was fully considered by the trial court through witness testimony in the midst of the trial. (*Record* v. 2 at 433). Applicant's claim that the delay in filing the motion deprived him of favorable plea offer is without merit because ultimately the motion to suppress was not granted.

As to the merits of the motion, Applicant contends that if trial counsel had moved to suppress evidence on the basis that there was no reasonable suspicion justifying the initial stop of Applicant, the motion would have succeeded, and he would have received a more favorable outcome at trial or in the plea bargaining process. In applying *Strickland* claims that allege counsel was ineffective for failing to file a motion to suppress, the Court looks "to the merits of the omitted issue" in the context of counsel's overall performance. *Neill v.*

*Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001)(citation and quotation omitted).  *See also United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995)("Counsel is not required by the Sixth Amendment to file meritless motions").

The police may conduct an investigatory detention of an individual if they have "reasonable suspicion" that the person may be involved in criminal activity.  *Terry v. Ohio*, 392 U.S. 1, 30 (1968).   Reasonable suspicion must be supported by "some minimal level of objective justification."  *INS v. Delgado*, 466 U.S. 210, 217 (1984). The likelihood of criminal activity need not rise to a level required for a probable cause finding and "falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

To be constitutionally valid, the police officer's action must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (citations omitted).  In determining whether the police had reasonable suspicion to detain the person, the Court must examine the "totality of the circumstances" to see if the detaining officer had a "particularized and objective basis" for suspecting criminal behavior.  *Arvizu*, 534 U.S. at 266.  Police officers may rely on their experience and training  to make inferences from circumstances that "might well elude an untrained person." *United States v. Cortez*, 449 U.S. 411, 418 (1981).

The CCA and the district court found that there was reasonable suspicion to detain Applicant because "the officer was suspicious due to the presence of a white man with a black man in a predominantly black area, the location of the meeting was a well-known drug dealing area, the efforts of the parties to attempt to maintain secrecy and avoid detection

13

by going around to a dark corner of the building and [the codefendant's] quick pace away from the scene." *Davis* at 8-9. In addition, before detaining Applicant, the police had arrested Lindenberg and found him in possession of crack cocaine. The fact that the conduct occurred in an area known for criminal activity is an appropriate factor in considering whether reasonable suspicion exists. *United States v. DeJear*, 552 F.3d 1196, 1201 (10th Cir. 2009). Nervous and evasive behavior is also a pertinent factor in a reasonable suspicion analysis. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

In sum, the police officers had a specific and articulable basis for suspecting Applicant was engaging in criminal conduct. I agree with the CCA that the police had reasonable suspicion to detain Applicant. Any motion to suppress on this issue would have been without merit. Therefore, Applicant's counsel was not ineffective for failing to file a motion to suppress based on the lack of reasonable suspicion.

### 4. Trial Performance

Applicant has also made several claims regarding his counsel's representation at trial. He claims his counsel was ineffective because he was not prepared for trial (claim 9), he failed to make an opening statement (claim 10), he did not pursue a theory of defense, he failed to file a motion for substitute counsel (claim 12), his cross-examination of witnesses was "very weak" (claim 13), and he failed to object to the trial court taking judicial notice of the codefendant's testimony at the suppression hearing (claim 14). The state court ruled that these issues involved trial strategy and, further, that Applicant was not prejudiced by his counsel's performance. *Davis* at 5; *Record* v. 2 at 434.

As an initial matter, it should be noted that the district court heard the testimony of both the Applicant and counsel at the evidentiary hearing. The court found the testimony

of trial counsel to be more credible. *Record* v. 2 at 433. The deference due to a state court's findings under § 2254 includes deference to credibility findings. *Church v. Sullivan*, 942 F.2d 1501, 1516 (10th Cir. 1991).

To succeed on his ineffective assistance of counsel claim, Applicant must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. The deference to an attorney's strategic trial decision will stand unless the decision itself is unreasonable. *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002). "Where it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United States v. Nguyen*, 413 F.3d 1170, 1181 (10th Cir. 2005) (citing *Bullock*, 297 F.3d at 1044). [E]very effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Counsel testified that he discussed the facts of the case and trial strategy with Applicant. *Record* v. III at 78. He was prepared for trial. As counsel noted, it was not a complex case. *Id.* at 83. Counsel stated that he did not make an opening statement so as to not jeopardize his credibility with the jury. *Id.* at 87. The decision to forego an opening statement does not in itself constitute deficient performance and may be a reasonable trial strategy. *United States v. Miller*, 907 F.2d 994, 1000 (10th Cir. 1990); *see also Malicoat v. Miller*, 426 F.3d 1241, 1261 (10th Cir. 2005) (finding that waiver of opening statement sound strategy when evidence is overwhelming). Contrary to Applicant's allegations, counsel did present a theory of defense. As the state district court noted:

> Trial defense counsel in his closing statement articulated the defense strategy. He chose to focus on the absence of any police testimony observing the actual sale of drugs. His strategy was to stay focused on that point and to not waste the jury's time on other less relevant issues.

*Record* v. 2 at 434.

Applicant's claim that counsel's cross-examination was weak is also belied by the trial transcript. Consistent with his trial strategy, counsel cross-examined the police officers on the fact that none of them actually saw the drug sale. He also challenged Lindenberg's credibility. *See Record* v. XIII at 178-82, 241-43, 258-59, 272-73. Likewise, Applicant's claim that his attorney's failure to file a motion to substitute counsel was ineffective assistance is without merit. Applicant alleges that he sent a letter under seal to the trial judge claiming that his counsel was not prepared for trial. *Record* v. III at 20-21. He never received a response to his letter. The Court notes that Applicant's counsel was retained by him. *Id.* at 75. Applicant does not claim, and the record does not reflect, that he attempted to fire his counsel or request that he move to withdraw or file a motion to substitute counsel. Moreover, such a request after trial began was unlikely to be successful. To warrant a substitution of counsel, defendant "'must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987). The timeliness of the motion is another consideration. *United States v. Johnson*, 961 F.2d 1488, 1490 (10th Cir. 1992). Finally, because of the overwhelming evidence of Applicant's guilt, as noted above, he cannot show prejudice on this issue.

Applicant claims that defense counsel's failure to object to the prosecutor's request that the trial court take judicial notice of the codefendant's trial testimony in the suppression

hearing was error. Applicant argues that because of this error, defense counsel was unable to cross-examine Lindenberg on the stop and detention issue. As stated above, Applicant's challenge to the initial detention would have been without merit. Therefore, Applicant was not prejudiced by the introduction of his codefendant's testimony through judicial notice.

### 5. Postconviction

Applicant also alleges that counsel was ineffective during the postconviction process. Applicant claims that counsel failed to file any post-trial motions, did not advise him on possible issues for appeal, and provided him with the inaccurate advice that an ineffective assistance of counsel claim could be raised at any time (claims 11, 15). Applicant has not identified what motions counsel should have filed after the conviction, nor any issues that should have been raised on appeal. As to the advice on an ineffective assistance of counsel claim, as the state district court observed: "[t]he Court has considered Defendant's post-conviction motions on the merits. Therefore, no prejudice to Defendant resulted from the inaccurate advice to Defendant concerning time limitations on post-conviction relief." *Record* v. 2 at 434. The CCA also fully considered the merits of Applicant's motion. Accordingly, Applicant suffered no prejudice from counsel's alleged error. The ineffective assistance of counsel claims are without merit.

## III. Conclusion

In reviewing the merits of Applicant's claims, the Court finds that Applicant is not entitled to relief pursuant to 28 U.S.C. § 2254. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court RECOMMENDS that the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that this case be

dismissed with prejudice.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: October 29, 2009

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge